UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSE M. CASTILLO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-40040-FDS |
| | ) | |
| STEVEN J. O'BRIEN, | ) | |
| | ) | |
| Respondent. | ) | |

### RESPONDENT'S MEMORANDUM OF LAW IN
### OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

After a jury trial in Worcester Superior Court before Massachusetts Superior Court Judge Justice Robert H. Bohn, Jr., the jury convicted Jose M. Castillo of indecent assault and battery on a child under 14 in violation of M.G.L. c. 265, § 13B and indecent assault and battery on a person 14 or over in violation of M.G.L. c. 265, §13H. After unsuccessfully pursuing a motion for a new trial and an appeal in the Massachusetts state courts, the petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By this habeas action, the petitioner contends that his continued incarceration by the respondent, Steven O'Brien, the Superintendent of North Central Correctional Institution, violates federal law. This memorandum of law is submitted in opposition to the petition for habeas corpus. The petition must be denied where the petitioner cannot demonstrate that the state court's adjudication of his Sixth Amendment right to an impartial jury claim and due process claim on the merits resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

## PRIOR PROCEEDINGS

On February 12, 1999, a Worcester County grand jury returned indictments charging Jose M. Castillo with two counts of rape of a child with force in violation of M.G.L. c. 265, § 22, four counts of indecent assault and battery of a child under 14 in violation of M.G.L. c. 265, § 13B, and one count of indecent assault and battery of a person 14 years or older in violation of M.G.L. c. 265, §13H.  *See* Respondent's Supplemental Appendix ("RSA"), Ex. 1 and Ex. 3 at 1. Prior to trial, the petitioner sought a change of venue, asserting the publicity surrounding an investigation into the disappearance of Marlon Santos, a child who disappeared while in foster care in the petitioner's home, would prevent the petitioner receiving a fair trial.  *See* RSA, Ex. 3 at 3, 46-48.  On December 6, 1999, then - superior court Judge Martha Sosman took no action on the motion, stating that it could be addressed closer to the time of trial to assess the extent and nature of publicity at the time of trial.  *See* RSA, Ex. 3 at 3, 46.  On January 14, 2000 and April 24, 2000, the renewed motion was denied by Massachusetts Superior Court Judge Daniel Toomey and Judge Elizabeth Butler, respectively.  *See* RSA, Ex. 3 at 4, 26.

A jury trial on one count of indecent assault and battery of a child under 14 and one count of indecent assault and battery of a person 14 years or older began on September 14, 2000, before Massachusetts Superior Court Judge Robert H. Bohn, Jr. and on September 21, 2000, the jury convicted the petitioner of both crimes.  *Id*.  Judge Bohn sentenced the petitioner to a state prison term of a minimum of five years and a maximum of seven and one-half years for the conviction of indecent assault and battery of a child under 14, and a concurrent four to five year state prison term for the second conviction.  *Id*. and Tr. VI/829-830.

On October 18, 2000, the petitioner filed a notice of appeal. *See* RSA, Ex.1 and Ex. 3. On the same day, the petitioner also filed a motion for a new trial. *Id*. On December 19, 2001, Judge Bohn held a non-evidentiary hearing on the motion for a new trial. *Id*. On November 4, 2002, Judge Bohn denied the motion for a new trial. *Id*. The petitioner appealed, and on April 29, 2004, in an unpublished memorandum and order pursuant to Mass. R.A.P. 1:28, the Massachusetts Appeals Court affirmed the judgments of conviction. *See* RSA, Ex. 5, *Commonwealth v. Castillo*, 61 Mass. App. Ct. 1102, 807 N. E. 2d 252 (2004). Castillo filed an application for further appellate review ("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC"). *See* RSA, Ex. 6. On June 30, 2004, the SJC denied the petitioner's ALOFAR. *See* RSA, Ex. 7, *Commonwealth v. Castillo*, 442 Mass. 1103, 810 N.E. 2d 1229 (2004).

On March 1, 2005, the petitioner filed the instant petition for habeas corpus asserting that his conviction was obtained in violation of his constitutional rights to due process and to be tried before a fair and impartial jury. *See* Petition at ¶ 12. On March 22, 2005, the respondent filed an answer to the petition for habeas corpus. *See* Docket at 6. On August 1, 2005, the petitioner filed a memorandum of law in support of his petition for habeas corpus. The respondent now files this memorandum of law in opposition to the petition for habeas corpus.

## STATEMENT OF THE FACTS

On January 11, 1997, 13 year old A.F. was placed in the petitioner's home as a foster child. Tr. II/220-222. One afternoon, approximately six months after she arrived in the petitioner's home, A.F. was sitting on the couch in the living room, watching television. Tr. II/227-228, 231. The petitioner entered the room and sat down on the couch next to her. Tr.II/232-33. After about five minutes, the petitioner placed his right hand on A.F.'s left

shoulder, leaving it there for a minute. Tr. II/233-234. The petitioner then put his hand down A.F.'s shirt and rubbed her breasts, beneath her bra, for "about a minute." Tr. II/226, 233-234. A.F. then got up and went to her bedroom. Tr. II/234-235.

Approximately two days later, A.F. again sat in the living room watching television, when the petitioner entered the room and sat down. Tr. II/237-237. Again, the petitioner placed his hand on A.F.'s shoulder, then put it down her shirt and rubbed her breasts. Tr. II/237. A.F. then moved to a different seat and the petitioner left the room. Tr. II/238. From that time on, the petitioner continued to touch A.F. in the same manner approximately three times a week until the middle of January, 1998. Tr. II/23-239, 248, 322. The indecent touchings continued after A.F. turned 14 on January 6, 1998. Tr. II/220, 248-249, 322. A.F. testified that she never consented to the petitioner's touching. Tr. II/242-243, 249.

On February 19, 1998, A.F. had a regularly scheduled therapy appointment with a social worker, Sara Wise, at the Worcester Youth Guidance Center. Tr. II/243-244; Tr. III/397-398, 400. Karen Morin, a parent aide for the Pernet Family Health Service, picked A.F. up to drive her to the appointment. Tr. III/400, 429. Recognizing that A.F. seemed unusually quiet and distant, Ms. Moran asked her what was wrong. Tr. III/430. A.F. said that they needed to talk at the guidance center. Tr. III/430. Ms. Morin tried to find out what the problem was, but A.F. just said that she wanted to talk. Tr. III/430. At the guidance center, A.F. and Ms. Morin waited for Sara Wise in the waiting room. Tr. III/431. When Ms. Wise approached, Ms. Morin told her that A.F. wanted to talk. Tr. III/431. Ms. Wise asked A.F. if she'd like to speak with her alone, or if she's like to speak with Ms. Morin and A.F.'s mother as well. Tr. III/403, 431. A.F. said that she wanted to meet with everyone. Tr. III/403, 431. During the meeting, Sara Wise asked

what was wrong, and A.F. replied that the petitioner had touched her. Tr. III/403, 408, 432-433. A.F. then began to cry. Tr. III/433. Ms. Wise asked where the petitioner had touched her, and A.F. said "down her front." Tr. III/433. She said that the petitioner had started out touching her shoulder, then "worked his way down with his hand." Tr. III/434. Ms. Wise asked A.F. if this was similar to something that her father had done to her, and A.F. said that it was.[1] Tr. III/403, 408, 434, 470.

After this discussion was complete, Ms. Wise called A.F.'s case worker at the Massachusetts Department of Social Services, Lee Fadavi. Tr. III/414-435. Ms. Fadavi came to the guidance center and met with A.F. Tr. III/414-415, 435. Following the meeting, Ms. Fadavi arranged for A.F. to be removed from the petitioner's home that evening. Tr. III/415, 435.

## ARGUMENT

**The Habeas Petition Should Be Denied Where the Petitioner's Claims Were Properly Adjudicated by the State Court, Which Did Not Render A Decision That Was Contrary To, or An Unreasonable Application of, Clearly Established Federal Law.**

### A.    The Standard of Review.

"Under the AEDPA, a state prisoner can prevail only if the state court's decision `was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States.'" *Tyler v. Cain*, 533 U.S. 656, 660 (2001), *quoting* 28 U.S.C. § 2254(d)(1). A state-court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where

---

[1] There was evidence that A.F.'s biological father had sexually assaulted her. Tr.III/409, 469-471.

"the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state-court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407-09, 413. Merely that the state court reached an incorrect result is not sufficient – the result also must be objectively unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002), *citing Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc) ("'some increment of incorrectness beyond error is required'. . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court," *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Where, for instance, the state court reaches a result that is "devoid of record support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied. *McCambridge*, 303 F.3d at 37, *citing O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998).

In some habeas cases, the resolution of the petitioner's claims will turn entirely on the state court's determination of the underlying factual issues. *DiBenedetto v. Hall*, 272 F.3d 1, 7 n.1 (1st Cir. 2001), *cert. denied*, 535 U.S. 1024 (2002). This is because, under the AEDPA, state court factual determinations are "presumed to be correct," unless the petitioner rebuts this "presumption of correctness" by coming forward with "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). The

presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion, *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *see also Thompson v. Keohane*, 516 U.S. 99, 111-13 (1995) (for purpose of *Miranda*, scene-setting factual findings involving the trial court's assessment of credibility, are presumed to be correct), and extends to factual determinations made by both state trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003).

> **B.    The Petitioner is Not Entitled to Federal Habeas Relief Because He Has Failed to Establish That The Massachusetts Appeals Court's Decision Rejecting His Pre-Trial Publicity Claim Was Either "Contrary To" or an "Unreasonable Application" of Clearly Established Supreme Court Law.**

Castillo alleges that his conviction was obtained in violation of his due process rights and his right to a fair trial because of the extensive pre-trial publicity stemming from his status as the foster father of a missing baby. *See* Petition at ¶12A and Petitioner's Memorandum of Law In Support of the Petition at pp. 16-18. Clearly consistent with the Supreme Court's decisions dealing with the issue of pretrial publicity and its potential impact upon a jury, the Massachusetts Appeals Court reasonably determined that the petitioner failed to meet his burden of demonstrating that publicity rendered his trial unfair in any manner. *See* RSA, Ex. 5, *Commonwealth v. Castillo*, 61 Mass. App. Ct. 1102, 807 N. E. 2d 252 (2004). The Constitution does not mandate reversal of a conviction merely because a high-profile case generates pre-trial publicity. *Sheppard v. Maxwell*, 384 U.S. 333, 354-355 (1966). In *Dobbert v. Florida*, 432 U.S. 282 (1977), the Supreme Court considered the issue of extensive pretrial coverage and its impact upon the defendant's constitutional right to a fair trial. The court relied in part upon its decision in *Murphy v. Florida*, 421 U.S. 794, 798 (1975), which held that convictions can only be overturned because of pretrial publicity if the "trial atmosphere had been utterly corrupted by

press coverage". In *Dobbert v. Florida*, the court held that:

> [E]xtensive knowledge of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial.

*Dobbert v. Florida*, 432 U.S. at 302-303.  A juror need not be completely ignorant of the facts or persons involved in the case in order to be impartial. *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

In *Irvin v. Dowd*, the court stated:

> [T]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id.*  Moreover, a juror's mind need not be a blank slate with respect to the defendant or facts of the case in order to meet the standard of due process.  Rather, the relevant question is whether the jurors had such a strong or fixed opinion that they could not be impartial.

Since the Appeals Court held that the petitioner failed to meet his burden of showing that publicity rendered his trial unfair in any manner by reference to a state court decision dealing with the federal constitutional issue, his claim was decided on the merits within the meaning of § 2254 and therefore entitled to the deferential review prescribed in subsection (d).  *See DiBenedetto v. Hall*, 272 F.3d at 6 ("when the state court has addressed the constitutional issue, it is the ultimate outcome and not its rationalization, which is the focus").  Although the Appeals Court cited to *Commonwealth v. Angiulo*, 415 Mass. 502, 515, 615 N.E. 2d 155 (1993) in its decision, *Commonwealth v. Angiulo* cites to both *Dobbert v. Florida*, 432 U.S. 282, 302-303 (1977) and *Murphy v. Florida*, 421 U.S. 794, 799 (1975).  *See Commonwealth v. Angiulo*, 415 Mass. at 515, 615 N.E.2d at 164.  Furthermore, the Appeals Court applied the substance and

form of the analysis mandated by *Murphy v. Florida*, 421 U.S. 794, 799(1975). Thus, the applicable Supreme Court precedent does not require an outcome "contrary to" that reached by the Appeals Court.

Furthermore, the Appeals Court decision did not "involv[e] an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of United States." 28 U.S.C. § 2254(d)(1). The petitioner merely asserts that the state court overlooked the unique feature of the petitioner's adverse publicity claim – that the publicity stemmed from and underscored his status as the foster father of the missing baby. *See* Petitioner's Memorandum of Law at p. 17. However, the record demonstrates that the trial judges who denied the petitioner's motions for a change of venue acted reasonably, as there was no showing that the petitioner could not receive a fair trial. Here, the petitioner simply failed to demonstrate that he did not receive a fair trial. Indeed, the petitioner himself states that twenty-five of the forty-two jurors had never heard of him and only two were certain that they had read or heard of him. *See* Petitioner's Memorandum of Law at p. 19-20. Habeas relief should be denied.

> C.  **The Petitioner is Not Entitled to Federal Habeas Relief Because He Has Failed to Establish That The Massachusetts Appeals Court's Decision Rejecting His Juror Partiality Claim Was Either "Contrary To" or an "Unreasonable Application" of Clearly Established Supreme Court Law.**

The petitioner also asserts that because the trial judge refused to ask the jury questions that would have informed then of potentially prejudicial information his conviction was obtained in violation of his right to due process and to be tried before a fair and impartial jury. *See* Petition at ¶12B and Petitioner's Memorandum of Law at p. 18-22. Clearly established Supreme Court precedent guarantees to the criminally accused a fair trial by an impartial jury. *Murphy v. Florida,* 421 U.S. 794, 79 (1975); *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). Although

challenges for cause are one tool in ensuring an impartial jury, the particular procedures by which prospective jurors may be challenged and removed for cause are *not* constitutionally mandated, but instead are creatures of statute. *See, e.g.,* G.L. c. 234, § 28; *see also*, Mass. R. Crim. P. 20(b)(1), 378 Mass. 889 (1979). Typically, prospective jurors may be challenged for cause "on narrowly specified, provable and legally cognizable bases of partiality," such as a personal relationship with a party, witness, or attorney in the litigation, or a biased state of mind concerning a party or issue in the case. *Swain v. Alabama,* 380 U.S. 202, 220 (1965), *overruled on other grounds by Batson v. Kentucky,* 476 U.S. 79 (1986). The defendant bears the burden of establishing that a juror is challengeable for cause on the ground of partiality. *Irvin,* 366 U.S. at 723 ("[u]nless [the challenger] shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside") (internal quotations omitted); *accord Dobbert v. Florida,* 432 U.S. 282, 302 (1977) *and Murphy,* 421 U.S. at 800.

The question whether an individual juror harbors bias that renders that juror removable for cause "is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount,* 467 U.S. 1025, 1036 (1984). In determining whether a prospective juror should be removed for cause on the basis of partiality, a trial court makes findings of fact that "ought not be set aside by a reviewing court, unless the error is manifest." *Irvin,* 366 U.S. at 723. On habeas review, moreover, the trial court's finding on the question of juror partiality is entitled to a presumption of correctness. *Patton,* 467 U.S. at 1038.

The Supreme Court has ruled that trial judges have broad discretion in assessing juror

impartiality. A prospective juror is not necessarily excusable *even* where that juror has formed opinions regarding the case, for the Supreme Court has made clear that "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved," and has observed that "to hold that the mere existence of a preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be an impossible standard." *Irvin,* 366 U.S. at 722-723. Instead, the Court has made clear that the juror impartiality requirement is satisfied "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.*

*Patton,* a federal habeas case, illustrates the broad discretion the Supreme Court has accorded trial courts in assessing juror impartiality. There, one juror said during voir dire that he had an opinion of the defendant's guilt based on pretrial publicity surrounding the case. However, the trial court found upon further questioning that the juror's opinion was not "fixed" and the juror credibly stated that he would be able to change his mind if the facts were so presented. *Patton,* 467 U.S. at 1035, 1039. The Supreme Court rejected the habeas petitioner's claim that this juror had adopted a presumption that the petitioner was guilty and therefore should have been removed for cause. *Id.* at 1039-1040. *See also Murphy,* 421 U.S. at 803, 805-806 (petitioner failed to show that jury selection process permitted inference of actual prejudice, despite admission by several jurors that they thought defendant's prior convictions would influence his verdict in instant case).

Furthermore, in *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1990), the Supreme Court held that a two-step voir dire examination, similar to the process employed by the Massachusetts trial court in the instant case, sufficiently covered the subject of possible bias by pre-trial publicity.

In *Mu'Min*, the trial court asked the entire venire of jurors four separate questions about the effect on them of pre-trial publicity or information about the case obtained by other means. *Id.* One juror admitted to having formed a belief as to petitioner's guilt and was excused for cause. *Id.* The trial court then conducted further *voir dire* in panels of four, and each time an individual juror indicated that he had acquired knowledge about the case from outside sources, he was asked whether he had formed an opinion; none of the jurors seated indicated that he had formed an opinion. *Id.* One juror who equivocated as to her impartiality was excused by the trial court on its own motion. *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1990). The Supreme Court rejected the petitioner's assertion that as a matter of constitutional right that not only the subject of possible bias from pre-trial publicity be covered – which it was — but that questions specifically dealing with the content of what each juror had read be asked. *Id*.

Measured against the controlling Supreme Court authority outlined above, the Massachusetts Appeals Court's adjudication of the petitioner's jury partiality claim was neither "contrary to" nor "an unreasonable application" of clearly established Supreme Court authority. In rejecting the petitioner's jury partiality claim, the Massachusetts Appeals Court reasoned as follows:

> The trial judge correctly declined to ask the jury questions that would have informed them of potentially prejudicial information. Contrary to the [petitioner]'s contention, the judge "was correct to resist pressure from trial counsel to inquire of the jurors further, with greater specificity concerning particular media reports or their content. Had he bowed to pressure, he would have risked spreading, by judicial suggestion, the very taint ... he sought properly to contain." *Commonwealth v. Sinnott*, 399 Mass. 863, 884 n. 19 (1987). "Such specific inquires could well have created a problem where there was none," *Commonwealth v. Kendrick*, 404 Mass. 298, 304 (1989), by informing otherwise impartial jurors of the connection between the [petitioner] and Marlon Santos, the missing child.

> "Jurors need not be totally ignorant of the case they are to decide.... All that is required is that the juror be able to lay aside his impression or opinion and render a verdict based on the evidence presented at trial." *Commonwealth v. Cokonougher*, 35 Mass.App.Ct. 502, 504 (1993). " 'Only those who assured [the judge] of their disinterest and freedom from emotional or intellectual commitment' ... were seated." (FN1)[2] *Commonwealth v. Simpson*, 434 Mass. 570, 576 (2001), quoting from *Commonwealth v. James*, 424 Mass. 770, 777 (1997).

*See* RSA, Ex. 5, *Commonwealth v. Castillo*, 61 Mass. App. Ct. 1102, 807 N. E. 2d 252 (2004). Analyzed under the first prong of § 2254(d)(1), the Appeals Court's decision rejecting the jury partiality claim was not contrary to clearly established Federal law, as determined by the Supreme Court of the United States. The Appeals Court's decision neither "appl[ied] a rule that contradicts the governing law set forth in [the Supreme Court's] cases," nor did it "confront[] a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrive[] at a result different from [the Supreme Court's] precedent." *Williams,* 529 U.S. at 405-406. Although the Appeals Court cited to *Commonwealth v. Sinott,* 399 Mass. 863, 884, n. 19, 507 N.E.2d 699, 711-712 (1987)*,* in its decision, *Commonwealth v. Sinott,* cites to both, *Irvin v. Dowd*, 366 U.S. 717, 722, n. 3 (1961) and *Murphy v. Florida*, 421 U.S. 794, 799 (1975). *See Commonwealth v. Sinott*, 399 Mass. at 883-884, 507 N.E.2d at 711-712. Thus, his claim was decided on the merits within the meaning of § 2254 and therefore entitled to the deferential review prescribed in subsection (d). *See DiBenedetto v. Hall*, 272 F.3d at 6. Furthermore, the Appeals Court applied the substance and form of the analysis mandated by *Murphy v. Florida*, 421 U.S. 794, 799(1975). For these reasons, the applicable Supreme Court

---

[2] Moreover, the [petitioner] did not express dissatisfaction with the judge's findings of juror impartiality, or attempt to challenge the jurors for cause. *See Commonwealth v. Cokonougher*, 35 Mass.App.Ct. at 504. *See also Commonwealth v. Colon*, 408 Mass. 419, 437 (1990).

precedent does not require an outcome "contrary to" that reached by the Appeals Court.

Furthermore, the Appeals Court decision did not involve an unreasonable application of clearly established Federal law, as determined by the Supreme Court of United States.  The petitioner asserts that he was deprived of his rights to due process and to a trial by a fair and impartial jury because the procedure followed by the trial court in conducting its voir dire of the prospective jurors did not adequately cover the subject of the "missing Marlon Santos baby" case.  *See* Petition at ¶ 12B and Petitioner's Memorandum of Law in Support of the Petition at p. 21.  However, the petitioner's reliance on *Sheppard v. Maxwell*, 384 U.S. 333 (1966), is misplaced.  In *Sheppard*, the Supreme Court held that due process requires that the accused receive a trial by an impartial jury free from outside influences.  In the instant case, the trial judge specifically asked the jurors about pre-trial publicity– whether they had read or heard anything about the petitioner – this inquiry included whether they had heard accounts of the petitioner's link to Marlon Santos, without injecting potentially prejudicial information into the jury selection.  In fact, the record demonstrates that before the individual voir dire began, three potential jurors stated that they were familiar with the petitioner's connection to the disappearance of a child.  *See* Tr. I/47-49, 58-60, 64.  Two of the three flatly stated that what they knew would affect their ability to be impartial.  *See* Tr. I/58-60, 64.

Additionally, the individual voir dire prompted responses from eight additional potential jurors who either had read reports about the petitioner and the missing baby, or who believed that the petitioner's name sounded familiar.  *See* Tr. I/70-73, 97-81, 94-97,99-100, 112-115, 133-135, 137-139, 140-142, 150-153.  The record illustrates that the three who stated that they could not be impartial were excused.  *See* Tr. I/ 79-81, 94-97, 112-115.  The record also clearly shows

that the jurors who were permitted to remain all clearly stated that they were impartial, and could consider the case based only upon the evidence. *See* Tr. I/ 70-73; 99-100, 133-135, 137-139, 140-142, 150-153. In fact, of the potential jurors who were familiar with the petitioner, only two were seated on the jury. *See* Tr. I/ 158, 162. It is also worth noting that the petitioner did not challenge them peremptorily or try to challenge them for cause. *See* Tr. I/ 158-166. One of the two was indeed chosen as an alternate. *See* Tr. V/789. Since the trial judge adhered closely to the guiding principles articulated by the United States Supreme by conducting a voir dire, and before deliberations began, excusing the jurors who were aware of petitioner's connection to the the missing baby and could not be impartial, the Appeals Court's decision is not an "unreasonable application" of Supreme Court authority. Habeas relief should be denied.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus relief should be denied.

          Respectfully submitted,

          THOMAS F. REILLY
          Attorney General

          /s/ Eva M. Badway
          Eva M. Badway
          Assistant Attorney General
          Criminal Bureau
          One Ashburton Place
          Boston, Massachusetts 02108
          (617) 727-2200, ext. 2824

Dated: August 29, 2005          BBO # 635431

_____

_____