## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 05-40040-FDS

JOSE M. CASTILLO,
**Petitioner**

v.

STEVEN O'BRIEN
**Respondent**

## Petitioner's Reply Memorandum in Support of Petition

### 1. The Petitioner Is Entitled To A "De Novo" Review Of His Federal Constitutional Claims.

The petitioner contends that his claims were not "adjudicated on the merits in (the) State court proceedings" and are thus subject to a *de novo* review by the Federal Court. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) only applies to a "claim that was adjudicated on the merits in state court proceedings." 28 U.S.C. §§ 2254(d). In the present case the state Appeals Court disposed of the petitioner's appeal pursuant to its Rule 1:28 which provides in pertinent part as follows: "At any time following the filing of the appendix ... and the briefs ... a panel of the justices of the (Massachusetts Appeals Court) may determine that **no substantial question of law is presented by the appeal** ... and may, by its written order,

affirm ... the action of the court below ..." Massachusetts Appeals Court Rule 1:28 (emphasis added). The Massachusetts Supreme Judicial Court (SJC) then denied the petitioner's application for further appellate review. (Respondent's Supplemental Answer, Items 6 & 7).

Rather than deciding any Federal constitutional claims on the merits, the Massachusetts Appeals Court determined that there were no "substantial questions of law" presented. Furthermore, the state Appeals Court's Memorandum and Order is mostly a verbatim copy of portions of the Commonwealth's brief. (Respondent's Supplemental Answer, Items 4 & 5) This practice is discouraged by state and federal courts. See, e.g. In re Las Colinas, Inc., 426 F.2d 1005 (1st Cir., 1970); Commonwealth v. Deminico, 408 Mass. 230, 238 (1990). "(T)he practice of adopting a party's proposed findings is not to be encouraged. It may cast some doubt on the independence of the court's thought process ... (F)indings of this sort (should be reviewed) with particular care." U.S. v. Marin, 651 F.2d 24, 28 fn. 10 (C.A.1 (Puerto Rico), 1981).

Federal authority was not cited by the state appellate court. The respondent contends that "(s)ince the Appeals Court held that the petitioner failed to meet his burden of showing that publicity rendered his trial unfair in any manner by reference to a state court decision dealing with the federal constitutional issue, his claim was decided on the merits within the meaning

2

of §2254 and therefore (is) *sic* entitled to the deferential review prescribed in subsection (d)." R.M. 8.[1]. See also R.M. 13. The respondent cites DiBenedetto v. Hall, 272 F.3d 1 (1st Cir. 2001), *cert. denied*, 535 U.S.1024 (2002) as authority for this proposition.

The DiBenedetto case is an appeal from the denial of a *habeas corpus* petition that was preceded by a state court conviction for a double homicide that was subject to a full review by the Massachusetts Supreme Judicial Court, including the required analysis mandated by G.L.c. 278, § 33E. Commonwealth v. DiBenedetto, 427 Mass. 414, 693 N.E.2d 1007 (1998). The case at bar, by contrast, involves a state court summary review by a lower appellate court that resulted in no reported decision. The 1st Circuit in DiBenedetto, despite the comprehensive state court analysis, still reviewed the claims *de novo* because it found that the "SJC chose to decide both issues on state law grounds." 272 F.3d @ 7. The SJC in DiBenedetto resolved the issues by reference to state court decisions that dealt with the federal constitutional issues. One issue dealt with the Commonwealth's inadvertent destruction of potentially exculpatory evidence. The SJC cited Commonwealth v. Willie, 400 Mass. 427 (1987) in referring to the

---

[1] Citation form will be as follows: to the State Court's Record Appendix as A.__; to the trial transcripts by volume and page as Tr.__:__; to the transcripts of the pretrial hearings by hearing date and page as PT(date):__; to the Respondent's Memorandum as "R.M.[page]", and to the Petitioner's Memorandum as "P.M.[page]".

"balancing test (that) is employed to determine the appropriateness and extent of remedial action." 427 Mass @ 419. In its Willie decision the SJC cited several federal cases when discussing this balancing test. However this was not enough to warrant the deferential standard of review that is now prescribed by the AEDPA. The argument for applying the deferential standard of review is less compelling in a state court case that has only been reviewed in a summary fashion by the state appellate court.

For all of these reasons the petitioner contends that his Federal constitutional claims were not "adjudicated on the merits in (the) State court proceedings", see Gruning v. Dipaolo, 311 F. 3d 69, 71 (1st Cir. 2002), and he is thus entitled to a *de novo* review of his Federal constitutional claims.

## 2. The Adverse Publicity Was Not About The Petitioner's Case – It Was About The Petitioner – And The Jurors Were Not Adequately Apprised Of The Petitioner's Identity For Them To Make Informed Responses To The Voir Dire Questions Regarding Their Ability To Remain Impartial.

The respondent, throughout its Memorandum, blurs the important distinction between a "high profile case" and a "high profile defendant", a distinction that is central to the petitioner's contentions. The respondent correctly states that "(t)he Constitution does not mandate reversal of a conviction merely because a high-profile case generates pre-trial publicity." R.M. 7. The respondent argues that "the petitioner himself states that

twenty-five of the forty-two jurors had never heard of him" without recognizing any likelihood that these prospective jurors were probably not aware or sure that the petitioner was the relatively notorious foster father of the missing baby. R.M. 9.

The point was not lost on Justice Sosman who stated, from the bench, on November 18, 1999, the following:

- "The problem that I have, or that I think the trial judge would have, is that the thing for which this defendant is now somewhat notorious in terms of publicity is not this set of charges that is about to be tried."

- "(H)ow is someone going to ask this panel who is going to be hearing this case about sexual assault ...: 'Well, have you read about this defendant's involvement with a missing baby?' without putting in mind ... during the course of the trial ... that (this is) the guy who is suspected in this missing baby case?"

- "How would I, or any other trial judge, impanel a jury in this county that would eliminate that problem?"

- "My inclination would be to grant this motion for change of venue while a cloud of suspicion hangs over this defendant's head in regard to the Marlon Santos case, and that suspicion is voiced broadly in the press, the local press, the way it is."

- "I think that the difficulties of impaneling a jury on these sexual assault charges here in Worcester are quite severe and would put the defendant in a very, very difficult strategic position in terms of how to handle that during impanellment."

- "The dangers of trying to examine jurors about it are so great that it becomes quite a quandary. ... (T)hose dangers are a great deal less if you do the trial somewhere else. You might much more safely decide that you would not want the panel questioned about the Marlon Santos matter ..."

⊕    "I don't think the defendant should be put in that difficult position when it can be solved by change of venue."

PT 11/18/99:12-23.

The respondent does not acknowledge this clear language from then Superior Court Judge Sosman and presumably seeks to ignore or downplay the significance of these judicial comments. The respondent's assertion that "there was no showing that the petitioner could not receive a fair trial", R.M.9, is not consistent with Justice Sosman's cautionary judicial remarks. The petitioner cited many examples indicating that his trial was unfair. These included references to the fact that the publicity was extensive and emotional, that it continued up to and through the trial, and that the publicity was not limited to the print media. A. 45, 125, 126-139.

The petitioner described in detail the impact of the adverse pretrial publicity by reference to the responses of the prospective jurors during the voir dire questioning. The equivocal and uncertain answers of several prospective jurors who thought they may have read or heard something about "Mr. Castillo" was recited by the defense in detail. Only one of these seven respondents was excused. Tr.I:80-81. Had these jurors known for certain that the petitioner was also the Marlon Santos foster father, they probably would not have been so equivocal in their responses. The two prospective jurors who were certain that this defendant was the missing

6

baby's foster father were excused for cause (Tr.I: 95-96; 114). These defense contentions are equally applicable to the claim that the case should have been tried elsewhere and to the claim that the voir dire questioning about the missing baby case should have been given.

Contrary to the respondent's contention, there was little risk that a specific inquiry about the jurors' knowledge of the "Marlon Santos" case and the petitioner's connection to this case would "have created a problem where there was none" R.M.12. In arguing otherwise, the respondent ignores the fact that some of the jurors were aware of the connection between the defendant and the "Marlon Santos" case, even though the respondent acknowledges, in its legal memorandum, that one or more of the deliberating jurors were familiar with the defendant and his connection to the missing baby case. R.M. 15.

The respondent misstates the record in contending that the trial court conducted an inquiry that included voir dire questions whether the jurors "had heard accounts of the petitioner's link to Marlon Santos..." No such questioning occurred. What was important – and needed to be developed – was the jurors' awareness that the petitioner was so closely associated with this Marlon Santos case.

The respondent's position suggests that potential jurors were expected to know about Jose Castillo simply because they heard his name. This

defendant, at least in Worcester County, was more commonly and widely known as the "foster father of the missing Marlon Santos baby", not as "Jose Castillo". The individual voir dire questioning that was done in this case was not fair to the jurors and not fair to this defendant.

If Ms. Sydney Biddle Barrows had been tried in New York City for offenses that were unrelated to the offenses for which she became famous, she would have probably sought voir dire questions whether any prospective jurors recognized her as the "Mayflower Madam", and, if so, whether they could still remain impartial. Similarly, if David Berkowitz were facing criminal charges unrelated to the murder charges for which he had been tried and convicted, he would have wanted prospective jurors who recognized him as the "Son of Sam" murderer to so state. The notoriety that would precede these trials would have warranted a change of venue from the New York City area, or, at a minimum, an effort to inform the prospective jurors who, precisely, was on trial. "Ms. Barrows" or "Mr. Berkowicz" may not have sparked much interest. But "Mayflower Madam" and "Son of Sam" would have attracted attention. This is the point that the petitioner has attempted, thus far unsuccessfully, to make on behalf of Jose Castillo, a.k.a. the "missing baby, Marlon Santos' foster father".

8

## Conclusion

The petitioner respectfully prays that an order enter that a writ of habeas corpus issue forthwith.

Respectfully submitted,
JOSE M. CASTILLO
by his attorney

James W. Rosseel, Esq.
P.O. Box 7294
Worcester, MA  01605
(508) 856-9444
BBO# 430400

9

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

## CIVIL ACTION NO. 05-40040-FDS

**JOSE M. CASTILLO,**
Petitioner

v.

**STEVEN O'BRIEN**
Respondent

### CERTIFICATE OF SERVICE

I, James W. Rosseel, Esq., hereby certify that on October 17th, 2005, I served a copy of the Petitioner's Reply Memorandum on the following parties by way of the U.S. Mail.

Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1598
att'n: Eva M. Badway, Ass't Attorney General

Date: _10/14/05_

James W. Rosseel, Esq.