UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOSE M. CASTILLO,** ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 05-40040-FDS |
| ) | |
| **STEVEN O'BRIEN,** ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Jose M. Castillo seeks habeas relief on the grounds that his federal constitutional rights were violated as the result of the trial court's failure (1) to order a change of venue, notwithstanding extensive pre-trial publicity concerning the disappearance of an infant who was in foster care in Castillo's home; and (2) to allow him to question prospective jurors concerning their knowledge of the missing infant and his connection to Castillo. For the reasons set forth below, the petition will be denied.

**I.   Background**

On September 21, 2000, Jose M. Castillo was convicted of indecent assault and battery on a child under the age of fourteen and indecent assault and battery on a person over the age of fourteen. The complainant was a female who had been placed in Castillo's home as a foster child in January 1997, when she was thirteen years of age. The complainant testified that Castillo

repeatedly touched her inappropriately over an extended period of time, beginning approximately six months after she was placed in his care and continuing until she was removed from the home in February 1998. She was removed from the house after revealing the abuse during a regularly scheduled appointment with her social worker.

On November 5, 1998, an infant named Marlon Santos, who had also been placed in foster care with Castillo and his wife, disappeared from their residence. The infant's disappearance was highly publicized in the local media.

Castillo was indicted on February 12, 1999, in the Worcester Superior Court for indecent assault and battery. On October 25, 1999, he filed a motion for a change of venue. In support of that motion, he submitted copies of various news reports that discussed the disappearance of Marlon Santos. On November 18, the motion was heard by the state court. The court noted that the pre-trial publicity about which Castillo was concerned was not related to the charges on which he was to be tried. The court voiced concern, however, about the possibility that jury members might at some point associate Castillo with the missing baby case. When the court inquired as to when the trial was expected to commence, the parties were unable to offer a specific date, because various matters were still under advisement by the court and it was anticipated that additional motions would need to be addressed prior to trial. The court stated as follows:

> assuming the status quo, my inclination would be to grant this motion for a change of venue while a cloud of suspicion hangs over this defendant's head in regard to the Marlon Santos case, and that suspicion is voiced broadly in the press, the local press, the way it is.
>
> I think that the difficulties of impaneling a jury on these sexual assault charges here in Worcester are quite severe and would put the defendant in a very, very difficult position and a very difficult strategic position in terms of how to handle that during impanelment . . . .

(Tr. Nov. 18, 1999, at 21). Given that the matter had not been set for trial and might not be for some time, the court deferred ruling on the motion for change of venue until a trial date was set. On December 6, the court ruled as follows: "No action taken at this time. When trial date is to be set, the need to transfer venue may be considered in light of an up-to-date assessment of the nature and extent of pre-trial publicity." (Resp. Supp. Answer at 46).

Castillo then renewed his motion for a change of venue. On January 14, 2000, another judge denied it "without prejudice to reconsideration prior to trial should circumstances warrant." (*Id.*). He renewed his motion for a second and third time; those renewed motions were denied without comment on April 24 and August 10, 2000, respectively.

The trial commenced on September 14, 2000. Prior to the trial, the presiding judge agreed to conduct individual voir dire regarding the sexual nature of the two charges and whether the jurors had heard or read anything in the media regarding Castillo. Castillo asked that the venire be informed that "[t]here has been extensive media coverage involving this Defendant and the missing 'Marlon Santos' baby case," and that the court ask the following two questions:

> Have you read or hear [*sic*] anything in the media about the missing [*sic*] Marlon Santos case?
>
> Does this fact make you question your ability to be fair and impartial in listening to the testimony in this trial?

(*Id.*, at 145). The judge denied the request as to those specific questions. Instead, the judge indicated that he intended to ask a more general question regarding whether any of the venire had read or heard anything about Castillo from the newspaper or television, believing that such a question would invite responses concerning the Santos case, if there were any. Castillo objected to the court's refusal to ask a question directly concerning the Santos case.

3

Prior to the individual voir dire, three potential jurors stated that they believed that they were familiar with Castillo. Two of the three jurors said that what they knew about him would affect their ability to be impartial and were excused from service.

The court then engaged in the individual voir dire of 42 potential jurors. During that process, the court asked the following question: "Have you read or heard anything about the defendant, Jose Castillo, from the newspapers, radio or television?" (Trial Tr. I: 6-7). This question elicited responses from nine potential jurors, some of whom had heard about Castillo's connection to Marlon Santos. Of those nine, three stated that they could not be impartial and were dismissed. Two of the individuals who responded affirmatively were seated on the jury; one was an alternate and the other juror deliberated in the case. The juror who deliberated indicated during the individual voir dire that she had "read the articles in the paper at the time," but that it would not affect her ability to listen to the evidence and decide the case based on that evidence. (Trial Tr. I: 100). The juror who was chosen as an alternate stated that she knew "about the sexual assaults . . . in the paper," and that she thought Castillo "had the little boy, the baby that was kidnapped out of his home." (*Id.* at 72). She further indicated that she thought she could decide the case based on the evidence and that nothing she had heard would affect her impartiality in the case. Castillo did not challenge either of these jurors for cause or exercise peremptory challenges against them.

On September 21, 2000, the jury returned a verdict of guilty. Castillo was sentenced to concurrent terms of incarceration of five to seven and one-half years on the charge of indecent assault and battery on a child under the age of fourteen and four to five years on the charge of indecent assault and battery on a person fourteen or over.

4

On October 18, Castillo filed a motion for new trial. In that motion, he asserted that he was denied due process of law, the right to a fair and impartial jury, and the right to effective assistance of counsel as the result of (1) the trial court's denial of his motion for a change of venue as the result of pre-trial publicity concerning the fact that he was the foster father of a missing child; (2) the trial court's failure to ask the individual voir dire questions that focused on the missing child case; (3) the late disclosure of material evidence (a Department of Social Services Report concerning one the complainants); (4) prosecutorial misconduct; and (5) the trial court's admission of "fresh complaint" testimony. That motion was denied on November 4.

Castillo appealed his convictions and the denial of his motion for new trial to the Massachusetts Appeals Court. The appeal asserted the following grounds: (1) the trial court had erred by refusing to grant his motion for change of venue due to pre-trial publicity concerning his connection to a missing child; (2) the trial court erred by refusing to ask potential jurors questions that would have informed them of potentially prejudicial information concerning the missing child; and (3) the trial court erred by admitting fresh complaint evidence consisting of the testimony of two counselors who had treated "A.F.," one of the complainants. The Appeals Court rejected the claims and affirmed his convictions on April 29, 2004.

Castillo then filed a timely Application for Further Appellate Review with the Supreme Judicial Court, in which he asserted that the Appeals Court (1) erroneously determined that a change of venue was unnecessary; (2) ignored or misconstrued instances of juror partiality as the result of the jury likely being aware of his connection to the missing baby; (3) erroneously affirmed the trial court's decision not to question prospective jurors concerning their awareness of his connection to the missing child; and (4) erred in applying the Massachusetts standards for

fresh complaint evidence in affirming the trial court's introduction of otherwise inadmissable hearsay. The SJC denied the application on June 30, 2004.

On March 1, 2005, Castillo filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.

## II. Analysis

### A. Standard of Review

Under federal law,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). Castillo contends that this Court should review his claims *de novo,* rather than apply the deferential standard set forth in § 2254(d), because the Appeals Court did not address the federal constitutional issues that he presented. Respondent argues that the Appeals Court's decision was consistent with controlling Supreme Court precedent and therefore the Court should apply the deferential standard.

In his direct appeal, Castillo contended that his conviction was obtained in violation of the Due Process Clause of the United States Constitution because his trial was held in Worcester County, notwithstanding extensive pre-trial publicity connecting him to the disappearance of Marlon Santos. In denying that claim, the Appeals Court stated as follows:

> The mere existence of pre-trial publicity, even if it is extensive, does not constitute a foundation of fact sufficient to require a change of venue . . . . There was no

> showing that the defendant could not receive a fair trial. Nor has there been a showing on appeal that the defendant did not receive such a trial.

*Commonwealth v. Castillo*, No. 03-P-264, 2004 WL 912712, at *1 (Mass. App. Ct. April 29, 2004) (internal citations omitted). The court cited *Commonwealth v. Clark,* 432 Mass. 1 (2000) and *Commonwealth v. Angiulo*, 415 Mass. 502 (1993). In *Angiulo,* the court addressed whether it was error for the trial court to deny a request for a change in venue. The court stated that "[t]he question, properly framed, is 'whether there are 'any indications in the totality of the circumstances that [the defendant's] trial was not fundamentally fair.''" *Angiulo*, 415 Mass. at 515 (*quoting Commonwealth v. Jackson*, 388 Mass. 98, 108 (1983) *and Murphy v. Florida*, 421 U.S. 794, 799 (1975)) (alterations in original). In *Clark*, the court reviewed the trial court's decision to deny a change of venue in light of the standards set forth in *Angiulo*. 432 Mass. at 5-6. The standard identified in *Angiulo* and *Clark* is the same standard set forth by the Supreme Court in *Murphy*—namely, whether there are any indications in the totality of the circumstances that petitioner's trial was not fundamentally fair. *See Murphy*, 421 U.S. at 799.

In his direct appeal, Castillo also contended that his conviction violated due process because the trial court refused to question prospective jurors concerning their knowledge of the missing infant and the connection to Castillo. In denying that claim, the Appeals Court stated as follows:

> The trial judge correctly declined to ask the jury questions that would have informed them of potentially prejudicial information . . . . 'Such specific inquiries could well have created a problem where there was none,' by informing otherwise impartial jurors of the connection between the defendant and Marlon Santos, the missing child.

7

> 'Jurors need not be totally ignorant of the case they are to decide . . . . All that is required is that the juror be able to lay aside his impression or opinion and render a verdict based on the evidence presented at trial.'

*Castillo*, 2004 WL 912712, at *1 (internal citations omitted) (alterations in original). The court cited *Commonwealth v. Cokonougher*, 35 Mass. App. Ct. 502, 504 (1993). In *Cokonougher*, the court found that the trial court did not abuse its discretion in not failing to excuse a juror who stated he knew "quite a bit about the case from the media." 35 Mass. App. Ct. at 503. The court stated that "[j]urors need not be totally ignorant of the case they are to decide. All that is required is that the juror be able to lay aside his impression or opinion and render a verdict based on the evidence presented at trial." *Id.* at 504 (internal citations omitted). This standard is the same as that set forth by the Supreme Court in *Murphy*, 421 U.S. at 799-800, and *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).

    Here, because the Appeals Court applied the standards set forth by the Supreme Court when deciding both the change of venue and the voir dire issues, this Court concludes that it did adjudicate petitioner's federal constitutional claims on the merits within the meaning of § 2254. *Cf. McCambridge v. Hall*, 303 F.3d 24, 35 (1st Cir. 2002) (applying the deferential standard of review where appeals court applied state court standard that was more favorable to defendant than federal standard); *DiBenedetto v. Hall*, 272 F.3d 1, 6 (1st Cir. 2001) ("If the state court has not decided the federal constitutional claim (even by reference to state court decisions dealing with federal constitutional issues), then we cannot say that the constitutional claim was 'adjudicated on the merits' within the meaning of § 2254 and therefore entitled to the deferential review prescribed in subsection (d)."). Accordingly, the Court will apply the deferential standard of § 2254(d) when considering the petition for habeas relief.

8

### B.     Grounds for Writ of Habeas Corpus

Petitioner asserts two substantive grounds for habeas relief: he contends that his due process rights were violated when the trial court (1) failed to change the trial venue despite extensive negative pre-trial publicity concerning his connection to the missing child; and (2) failed to allow him to question prospective jurors concerning their knowledge of the child's disappearance and the connection to Castillo. The Court will address each ground in turn.

#### 1.     Change of Venue

The first ground on which petitioner seeks habeas relief is the trial court's denial of his motion for a change of venue. Petitioner contends that the extensive pre-trial publicity surrounding an investigation into the disappearance of Santos, who was in foster care in his home, prevented him from receiving a fair trial in Worcester County. Respondent contends that petitioner failed to meet his burden of demonstrating that his trial was in any way unfair.

As noted, the Appeals Court concluded that there was "no showing" that the defendant "could not receive a fair trial" and "did not receive a fair trial." *Castillo*, 2004 WL 912712, at *1. Notwithstanding petitioner's contentions, the court's conclusions are not contrary to, and did not involve an unreasonable application of, clearly established federal law.[1]

"A state-court decision contravenes the 'unreasonable application' criterion when, though it correctly identifies the pertinent United States Supreme Court rule, its application to the particular facts of the case at bar is objectively unreasonable." *Correia v. Hall*, 364 F.3d 385,

---

[1] Petitioner does not address 28 U.S.C. § 2254(d)(2), which allows for habeas relief if the petitioner can prove that the state court adjudication of his claims resulted in a decision that "was based on an unreasonable determination of the facts." Accordingly, the Court will only address the "unreasonable application" provision of § 2254(d)(1).

388 (1st Cir. 2004) (internal citation omitted). Finding that the state court reached an incorrect result is not a sufficient basis to find that there was an unreasonable application of federal law—the result must be objectively unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002); *see also McCambridge*, 303 F.3d at 36-37 ("'[S]ome increment of incorrectness beyond error is required.' . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.") (internal citation omitted).

Here, the Appeals Court's application of the federal law was reasonable. The Supreme Court has stated that "extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair." *Dobbert v. Florida*, 432 U.S. 282, 303 (1977). In *Dobbert*, the Supreme Court stated that the petitioner's "argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed [the Court] to no specific portions of the record . . . which would require a finding of constitutional unfairness . . . ." *Id.* Similarly, petitioner makes much of the fact that there was extensive pre-trial publicity surrounding him and the Santos case, but is unable to direct this Court to specific portions of the record that support a finding that this publicity caused his trial to be constitutionally unfair.

Petitioner primarily relies on four Supreme Court cases—*Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1965); *Rideau v. Louisiana*, 373 U.S. 723 (1963); *and Irvin*—to support his claim. The facts of those cases, however, differ significantly from the present case. *See Sheppard*, 384 U.S. at 345 (every juror, except one, had seen or read media reports about the defendant and his alleged crimes and jurors themselves were the subjects of

10

newspaper photographs and articles); *Estes,* 381 U.S. at 534-35, 550-51 (defendant's pre-trial hearing and trial were repeatedly televised); *Rideau,* 373 U.S. at 726 (defendant's recorded confession to charged crimes was repeatedly televised); *Irvin*, 366 U.S. at 728 (two-thirds of jurors seated had formed an opinion that defendant was guilty, and acknowledged familiarity with material facts and circumstances of the case). Indeed, in *Murphy*, the Supreme Court distinguished these four earlier cases by stating that

> the proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob. They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process . . . . [W]e must turn, therefore, to any indications in the totality of circumstances that petitioner's trial was not fundamentally fair.

421 U.S. at 799.

Here, petitioner made no showing that, under the totality of the circumstances, his trial was fundamentally unfair. The Court therefore concludes that the Appeals Court did not err in its treatment of the request for change of venue, and petitioner is not entitled to relief on the basis of the trial court's denial of that request.

### 2. **Voir Dire**

The second ground on which petitioner seeks relief is the trial court's refusal to allow inquiry into whether the jurors knew anything about the Marlon Santos case. Prior to his trial, he requested that the trial judge ask two questions about whether the potential jurors had heard anything in the media about the "missing Marlon Santos case" and, if they had, whether that information impacted their ability to be fair and impartial jurors. As noted, the judge refused to ask those specific questions, and instead asked a more general question about whether the jurors

had ever read or heard anything about petitioner.  Petitioner contends that the trial court did not adequately cover the subject of his connection to the "missing infant" case.

As noted, the Appeals Court found that "[t]he trial judge correctly declined to ask the jury questions that would have informed them of potentially prejudicial information." *Castillo*, 2004 WL 912712, at *1.  Again, the Appeals Court's conclusions are not contrary to, and do not involve an unreasonable application of, clearly established federal law.  *See Correia*, 364 F.3d at 388; *L'Abbe*, 311 F.3d at 96.

Trial judges have broad discretion in assessing juror impartiality.  *See Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991) ("[Supreme Court cases] have stressed the wide discretion granted to the trial court in conducting voir dire in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias.  Particularly with respect to pretrial publicity, we think this primary reliance on the judgment of the trial court makes good sense.").  In determining whether a prospective juror should be removed for cause on the basis of partiality, a trial court makes findings of fact that "ought not be set aside by a reviewing court, unless the error is manifest."  *Irvin*, 366 U.S. at 723.  The Supreme Court has stated that "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved," and has observed that "to hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be an impossible standard."  *Id.* at 722-23.  Rather, the impartiality requirement is satisfied "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  *Id.* at 723.

In *Mu'Min*, the trial court engaged in a voir dire process similar to the one in this case. The trial court asked the prospective jurors about the effect of pre-trial publicity, and excused jurors who admitted to having formed beliefs as to petitioner's guilty or who equivocated as to their impartiality. 500 U.S. at 431. Eight of the twelve jurors who sat on the jury in *Mu'Min* answered that they had read or heard something about the case, but none of those eight indicated that he had formed an opinion as to the guilt or that the information would affect his ability to judge the defendant on the basis of the evidence presented at trial. *Id.* at 428 (contrasted with *Irvin*, where the "trial court excused over half of a panel of 430 persons because their opinions of the defendant's guilt were so fixed that they could not be impartial, and 8 of the 12 jurors who sat had formed an opinion as to guilt."). Petitioner in *Mu'Min* insisted that, as a matter of constitutional right, "questions specifically dealing with the content of what each juror ha[d] read be asked." *Id.* at 431. However, the Supreme Court held that "the Due Process Clause of the Fourteenth Amendment does not reach this far, and that the *voir dire* examination conducted by the trial court in this case was consistent with that provision." *Id.* at 431-32.

Here, as in *Mu'Min,* the trial court declined to ask more specific voir dire questions—namely, whether they knew about his connection to Marlon Santos. Rather, the court made general inquiries into whether the jurors knew anything about petitioner and, if they did, whether that information would affect their ability to be fair and impartial jurors. That voir dire examination meets the basic constitutional requirements. *See Patton v. Yount*, 467 U.S. 1025, 1035, 1039 (1984) (rejecting petitioner's claim that jurors who had opinions of petitioner's guilt based on pre-trial publicity, but who said they could set their opinions aside, had adopted a presumption that petitioner was guilty and should have been removed for cause). Furthermore,

only two of the fourteen jurors in petitioner's case had heard anything about him from the media; both assured the trial court that they could be impartial, and only one of them deliberated in the case.[2] Accordingly, the Appeals Court's adjudication of his voir dire claim was neither contrary to nor an unreasonable application of federal law under § 2254. Petitioner is not entitled to relief on the basis of the trial court's denial of his request for voir dire questions.

### III.  Conclusion

For the foregoing reasons, the petition of Jose M. Castillo for a writ of habeas corpus pursuant to 28 U.S.C. §2254 is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 20, 2008

---

[2] As noted, petitioner neither challenged those jurors for cause nor exercised peremptory challenges against them.